UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG DUONG NGUON,<br><br>                     Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, Warden,<br><br>                     Respondent. | Case No.: 22-cv-00181-JO-JLB<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO DISMISS THE PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 12]** |

This Report and Recommendation is submitted to the Honorable Jinsook Ohta, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California.

On February 7, 2022, Petitioner Hung Duong Nguon ("Petitioner"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus (the "Petition") before this Court pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On April 20, 2022, Respondent Raymond Madden ("Respondent"), Warden at Richard J. Donovan Correctional Facility, filed a Motion to Dismiss and lodged the state court record. (ECF Nos. 12, 13.) On May 4, 2022, Petitioner filed a Response in Opposition. (ECF No. 14.)

Having reviewed the Petition, Respondent's Motion, Petitioner's Opposition, as well as the record as a whole, the Court **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED**, and the case be **DISMISSED**.

## I. BACKGROUND

### A. Underlying Facts

In 1997, Petitioner was convicted of kidnapping during commission of a carjacking, in violation of Cal. Penal Code § 209.5, and personal use of a firearm in the commission of a felony, in violation of Cal. Penal Code § 12022.5. (ECF No. 13-2 at 1.) Petitioner was subsequently sentenced to a term of life plus three years. (*Id.*)

Prior to the hearing at issue, Petitioner was granted hearings before the California Board of Parole Hearings (the "Board") in 2005, 2007, 2009, 2010, and 2017, and parole was denied on each occasion. (ECF Nos. 1 at 4; 1-13 at 4–5.) On January 7, 2021, the Board again denied Petitioner parole, citing an overfamiliarity rule violation in 2019, continued lack of self-control, poor coping skills, inadequate insight into the criminogenic factors underlying the commitment offense, and a high-risk rating on the most recent comprehensive risk assessment. (ECF No. 1-2 at 54–64.)

### B. State Court Petitions

On March 19, 2021, Petitioner filed a habeas petition in Los Angeles County Superior Court challenging the 2021 denial of parole. (ECF No. 13-1 at 1–6.) On April 1, 2021, the Superior Court denied the petition, stating that (1) Petitioner failed to exhaust his administrative remedies, and (2) the Board "conducted a very thorough hearing" resulting in a "very logical and well thought opinion," specifically citing the Board's consideration of "a number of incidents of inappropriate conduct of a quasi-sexual nature that the Petitioner has engaged in since being incarcerated." (ECF No. 13-2 at 1–2.)

On May 27, 2021, Petitioner filed a habeas petition in the California Court of Appeal (ECF No. 13-5), which the Court of Appeal summarily denied on June 23, 2021 (ECF No. 13-6).

On September 17, 2021, Petitioner filed a habeas petition in the California Supreme Court. (ECF No. 13-3 at 1.) Petitioner argued the Board's denial of parole violated the Eighth Amendment's prohibition against cruel and unusual punishment, the Fourteenth Amendment's Due Process Clause, and the Sixth Amendment's requirement for facts to be found beyond a reasonable doubt in criminal cases. (*Id.* at 3–4, 7–9.) On November 23, 2021, the California Supreme Court summarily denied the petition. (ECF Nos. 1-12 at 2; 13-4 at 1.)

### C. Federal Petitions

Petitioner has filed several federal habeas petitions relating to his parole denials. *See Hung Duong Nguon v. Dickinson*, No. CIV S10-0411-WBS-CMK-P, 2010 WL 3825496 (E.D. Cal. Sept. 28, 2010) (challenging his 2009 parole denial); *Hung Duong Nguon v. Dickinson*, No. CIV S-10-0289 EFB P, 2011 WL 283866 (E.D. Cal. Jan. 25, 2011) (challenging his 2009 parole suitability hearing); *Hung Duong Nguon v. Virga*, No. 2:12-CV-1913-MCE-CMK, 2014 WL 996215 (E.D. Cal. Mar. 13, 2014) (challenging his 2010 parole denial); *Hung Duong Nguon v. Baughman*, No. 2:18-CV-2896-JAM-DMC-P, 2019 WL 2994500 (E.D. Cal. July 9, 2019) (challenging his 2018 parole denial).

On February 7, 2022, Petitioner filed the instant federal Petition. Petitioner claims the Board's decision to deny parole in 2021 violated multiple provisions of federal and state law. Specifically, Petitioner alleges: (1) the Board's denial of parole resulted in an excessive, disproportionate sentence in violation of the Eighth Amendment (Ground One); (2) the Board violated the *Ex Post Facto* Clause by implementing Marsy's Law,[1] which

---

[1] In 2008, California voters passed Proposition 9, known as the Victims' Bill of Rights Act of 2008: Marsy's Law ("Marsy's Law"). Marsy's Law significantly changed the law governing parole hearing deferral periods by: (1) increasing the minimum deferral period from one years to three years; (2) increasing the maximum deferral period from five years to fifteen years; and (3) increasing the default deferral period from one year to fifteen years. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1104 (9th Cir. 2011); *see also* Cal. Penal Code § 3041.5(b)(3).

increased deferral periods between parole hearings and resulted in Petitioner's prolonged incarceration (Ground Two); (3) Petitioner's parole hearing violated the Due Process Clause because the Board, *inter alia*, did not allow Petitioner to present favorable evidence (Grounds Two, Three, Seven); (4) the Board's decision to deny parole was unsupported by the facts and did not meet California's "some evidence" standard (Grounds Four, Five, Six, Eight, Nine); and (5) the Board violated the Sixth Amendment by considering facts in denying Petitioner parole not found by a jury beyond a reasonable doubt (Grounds Ten and Eleven).  (*See* ECF Nos. 1 at 4–6, 10, 12, 14–17; 14 at 3–4.)  In his Prayer for Relief, Petitioner seeks a declaration that he is in custody in violation of the Constitution or laws or treaties of the United States, immediate release from prison, and the invalidation of the duration of his confinement.  (*Id.* at 6, 22.)

On April 20, 2022, Respondent filed a Motion to Dismiss arguing the claims fell outside the Court's habeas and subject matter jurisdiction, in addition to being partially unexhausted, untimely, and insufficiently pled.  (*See* ECF No. 12-1 at 8.)  On May 4, 2022, Petitioner filed an Opposition.  (ECF No. 14.)

## II.     LEGAL STANDARD

A federal habeas corpus petition challenges the legality or duration of confinement. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006).  Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Thus, to present a cognizable federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court," and that he is in custody in "violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  In addition, Rule 2(c) of the Rules Governing § 2254 Cases in the United States District Courts ("Rules

Governing § 2254") requires that the petition "specify all the grounds for relief available . . . . [and] state the facts supporting each ground." Rules Governing § 2254, R. 2(c).

A motion to dismiss a petition for writ of habeas corpus is viewed as a request to dismiss under Rule 4 of the Rules Governing § 2254. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4 of the Rules Governing § 2254, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . ." Rules Governing § 2254, R. 4; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) (noting that under Rule 4, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *O'Bremski*, 915 F.2d at 420 (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977)) (internal quotation marks omitted). Moreover, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

## III. DISCUSSION

### A. Statute of Limitations

AEDPA imposes a one-year statute of limitations on all federal habeas petitions filed by persons in custody pursuant to the judgment of a state court, including those which challenge the denial of parole. *Redd v. McGrath*, 343 F.3d 1077, 1080 (9th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)). "[F]or prisoners challenging administrative decisions such as the denial of parole . . . , AEDPA's statute of limitations begins running under § 2244(d)(1)(D) on the date the administrative decision became final." *Id.* at 1084. In the California penal system, a denial of parole becomes final 120 days after the hearing. *See* 15 Cal. Code Regs. § 2041(h) ("Proposed decisions made at [parole board] hearings for prisoners serving a sentence of life with the possibility of parole . . . shall become final within 120 days of the hearing."); *see also Tidwell v. Marshall*, 620 F. Supp. 2d 1098,

1100–01 (C.D. Cal. 2009) (holding the statute of limitations commenced 120 days after the hearing denying parole occurred).

The instant Petition challenges the denial of parole which occurred at a hearing on January 7, 2021.² (ECF No. 1 at 1–2.)  Because the denial became final on May 7, 2021—120 days after the hearing date—Petitioner had until May 8, 2022, to challenge the decision in federal court.  Petitioner filed the instant Petition on February 7, 2022, well within the statute of limitations.  Accordingly, the Court finds that the Petition is timely.

    **B.**    ***Ex Post Facto* Clause Claim (Ground Two)**

        1.    <u>Exhaustion</u>

In Ground Two, Petitioner alleges the Board violated the *Ex Post Facto* Clause by implementing Marsy's Law, which increased deferral periods between parole hearings and, Petitioner argues, resulted in Petitioner's prolonged incarceration.  (ECF No. 1 at 14.) Petitioner alleges that Marsy's Law retrospectively "mak[es] parole hearings less accessible[,] effectively increas[ing his] sentence." (*Id.*)  In moving to dismiss, Respondent argues that Petitioner's *ex post facto* claim was first raised in the instant Petition; therefore, it is unexhausted, and the Petition must be dismissed.  (ECF No. 12-1 at 18–19.)  Petitioner argues in his Opposition that his *ex post facto* and Eighth Amendment claims "go[] together [f]rom the Superior Court to the Appellate Court to the California Supreme Court."  (ECF No. 14 at 11.)  In this respect, Petitioner contends that it is the implementation of Marsy's Law that effectuates the alleged Eighth Amendment violation and amounts to "cruel and unusual punishment." (*Id.*)  Petitioner thus argues that by exhausting his Eighth Amendment claim, he also exhausted his related *ex post facto* claim.

---

²     Respondent argues that the Petition additionally challenges parole denials prior to 2021, all of which would arguably be barred by the statute of limitations.  (ECF No. 12-1 at 17–18.)  However, as is clear from the Petition, and as Petitioner clarifies in his Opposition, he is only challenging his 2021 denial of parole.  (*See* ECF No. 14 at 10–11.)

A federal habeas petitioner wishing to challenge the length of his confinement must first exhaust available state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The rule of exhaustion requires that a habeas petitioner "fairly present" his federal claims to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "Fair presentation requires that a state's highest court has 'a fair opportunity to consider . . . and to correct [the] asserted constitutional defect.'" *Lounsbury v. Thompson*, 374 F.3d 785, 787 (9th Cir. 2004) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

To fully and fairly present a claim to the state courts, a petitioner "must describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim." *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (internal quotation marks omitted), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (recognizing that "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief"). A claim is not "fairly presented" if the state court "must read beyond a petition or a brief . . . in order to find material" that alerts it to the presence of a federal claim. *Baldwin*, 541 U.S. at 32 (concluding that a petitioner does not "fairly present" an issue for exhaustion purposes when an appellate judge can only discover the issue by reading a lower court opinion in the case).

However, "a petitioner has 'fairly presented' a claim not named in a petition if it is 'sufficiently related' to an exhausted claim." *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008). "Claims are 'sufficiently related' or 'intertwined' for exhaustion purposes when, by raising one claim, the petition clearly implies another error." *Id.* (quoting *Lounsbury*, 374 F.3d at 788); *cf. Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("[M]ere similarity of claims is insufficient to exhaust."). "This exception does not apply when

language in a petition for review indicates a petitioner's 'strategic choice' not to present an issue for review." *Id.* (quoting *Lounsbury*, 374 F.3d at 788).

Before the California Supreme Court,[3] Petitioner presented the following claims: (1) a due process claim based on the Board's alleged denial of his right to be heard (*i.e.*, denied the right to object and present favorable evidence, lack of impartial hearing, and a pre-decided outcome), (2) an Eighth Amendment claim for cruel and unusual punishment based on the Board's alleged use of misinformation to deny parole indefinitely, (3) a Sixth Amendment claim based on the Board's alleged consideration of facts not found by a jury and the use of those facts to increase Petitioner's punishment, and (4) a state law claim that the Board abused its discretion. (ECF No. 13-3 at 3–9.) In his petition before the California Supreme Court, Petitioner does not mention the *Ex Post Facto* Clause or Marsy's Law or the length of time between Board hearings. Moreover, his Eighth Amendment claim in the Supreme Court petition is not based on the timing of Board hearings. Thus, Petitioner's *ex post facto* claim and Eighth Amendment claim are not "sufficiently related" or "intertwined," such that exhaustion of the latter exhausts the former. *See Wooten*, 540 F.3d at 1025. Accordingly, the Court finds that Petitioner has not exhausted his *ex post facto* claim.

In the interests of comity and federalism, "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). However, a federal court may dismiss an unexhausted ground for relief where it is perfectly clear that the petitioner has not raised a colorable federal claim. *Cf. Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that "a federal court may

---

[3] "All courts in California have original habeas corpus jurisdiction," such that a subsequent petition in a higher court is "a *new* petition invoking that court's original jurisdiction," and the lower court's ruling is "not directly review[ed]." *Robinson v. Lewis*, 9 Cal. 5th 883, 895–96 (2020).

deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim"); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). For the reasons discussed below, the Court finds that it is perfectly clear that Petitioner has not raised a colorable *ex post facto* claim.

2. Not Cognizable on Habeas Review

Respondent further moves to dismiss Petitioner's *ex post facto* claim on the basis that the claim is precluded by the Ninth Circuit's decision in *Gilman v. Brown*, 814 F.3d 1007 (9th Cir. 2016) ("*Gilman II*"), *cert. denied* 137 S. Ct. 650 (2017). (ECF No. 12-1 at 15.) After the passage of Marsy's Law, several California state inmates challenged the law in a class action lawsuit filed in district court, asserting that the law violated the *Ex Post Facto* Clause. *Gilman v. Brown*, 110 F. Supp. 3d 989, 990 (E.D. Cal. 2014), *rev'd and remanded on other grounds*, *Gilman II*, 814 F.3d 1007 (9th Cir. 2016). The certified class consisted of all California state prisoners who had been sentenced to a life term with the possibility of parole for an offense that occurred before November 4, 2008. *Id.* The district court held that Marsy's Law violated the *ex post facto* rights of the class members. *Id.*

The Ninth Circuit reversed, finding that the challenged provisions of Marsy's Law were not an *ex post facto* violation because "a decrease in the frequency of parole hearings—without more—is not sufficient to prove a significant risk of lengthened incarceration." *Gilman II*, 814 F.3d at 1016. The Ninth Circuit instructed the district court on remand to enter judgment for the State of California. *Id.* at 1022. Accordingly, the Ninth Circuit has foreclosed the argument that Marsy's Law violates the *Ex Post Facto* Clause.

///
///
///
///

Moreover, Petitioner falls within the *Gilman* class. *See Paul Madden, et al., v. Fisher, et al.*, No. 05-cv-00830-MCE-CKD (E.D. Cal.) ("*Gilman*").[4]  As alleged in his Petition, Petitioner is a California state prisoner who was sentenced to a life term with the possibility of parole for an offense that occurred before November 4, 2008. (*See* ECF No. 1 at 8.) Petitioner did not opt out of the class. *See Gilman*, ECF Nos. 340, 450, 474, 479. Therefore, he cannot maintain an independent *ex post facto* challenge to Marsy's Law. *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."); *Rios v. Warden*, 854 F. App'x 129 (9th Cir. 2021) (finding that the district court properly dismissed the petitioner's claim that Marsy's Law violates the *Ex Post Facto* Clause because it is foreclosed by *Gilman II*, citing claim and issue preclusion), *cert. denied sub nom. Rios v. Clark*, 142 S. Ct. 1424 (2022); *Guillory v. Bd. of Parole Hearings*, No. 1:16-CV-00796 MJS HC, 2016 WL 8731061, at *4 (E.D. Cal. June 17, 2016) (finding that members of the *Gilman* class may not maintain a separate, individual suit for equitable relief involving the same subject matter of the class action).[5]

For the foregoing reasons, the Court finds that Petitioner's *ex post facto* claim based on the implementation of Marsy's Law must be dismissed.

///
///

---

[4]  The Court takes judicial notice of the docket in *Gilman See* Fed. R. Evid. 201(b); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that a court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

[5]  The Court notes that Petitioner previously raised this *ex post facto* claim in a prior federal habeas petition challenging his 2010 parole denial. *See Hung Duong Nguon*, 2014 WL 996215, at *3. As Petitioner is a member of the *Gilman* class, his claim was dismissed. *Id.*

### C. Sixth Amendment Claim (Grounds Ten and Eleven)

In Grounds Ten and Eleven, Petitioner claims the Board violated the Sixth Amendment by considering facts not found by a jury beyond a reasonable doubt, and by illegally increasing Petitioner's sentence from life to death.[6] (ECF No. 1 at 5–6.) In support of his claims, Petitioner cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Cunningham v. California*, 549 U.S. 270 (2007). (ECF No. 1 at 6.) Respondent does not address Petitioner's Sixth Amendment claims. However, under Rule 4 of the Rules Governing § 2254, the district court "must dismiss the petition" if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rules Governing § 2254, R. 4; *see also McFarland*, 512 U.S. at 856.

The Fourteenth Amendment and the Sixth Amendment, "[t]aken together, . . . indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U.S. at 477 (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Supreme Court expanded *Apprendi*, holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." 542 U.S. at 303 (emphasis in original) (citations omitted); *see also Booker*, 543 U.S. at 243–44 (holding that *Blakely*

---

[6] In context, it is clear that Petitioner's reference to a sentence of "death" is used with some literary license to underscore the seriousness of his situation and is not a literal allegation of the imposition of a death sentence in his case. Petitioner is not alleging that he is at risk of being executed by the State, as would be the case with a death sentence. Instead, he is indicating that if he is denied parole indefinitely, he will die in prison. This is the definition of a life sentence, as opposed to a sentence of death.

and *Apprendi* apply to the Sentencing Guidelines). Finally, in *Cunningham*, the Supreme Court held that California's then-existing determinate sentencing law violated *Apprendi,* stating that "[i]f the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." 549 U.S. at 290.

Here, Petitioner's indeterminate life sentence is in legal effect a sentence for the maximum term of life imprisonment "subject only to the ameliorative power of the [Board] to set a lesser term." *In re Dannenberg*, 34 Cal.4th 1061, 1097–98 (2005). As such, a denial of parole under these circumstances does not increase Petitioner's sentence beyond the statutory maximum of life imprisonment. Moreover, unlike trial and sentencing proceedings, parole hearings are not part of the criminal prosecution and therefore "the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987); *see also United States v. Knights*, 534 U.S. 112, 120 (2001) (right to a jury trial and requirement of proof beyond a reasonable doubt are inapplicable in probation revocation proceedings); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."); *United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005) ("Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable [from parole revocation hearings] and are analyzed in the same manner.").

Finally, district courts in the Ninth Circuit have consistently rejected habeas claims, such as Petitioner's here, that parole denials are tainted by *Blakely* or *Apprendi* error. *See, e.g.*, *Down v. Haviland*, No. 2:09-CV-2794 TLN EFB, 2013 WL 3745460, at *9 (E.D. Cal. July 15, 2013) (rejecting the petitioner's claim that the Board's failure to find him suitable for parole transformed his sentence into one of life without the possibility of parole because his sentence was not "increased" in any way by the Board's decision); *Robinson v. Gonzalez*, No. CV 12-91-SJO (PLA), 2012 WL 1642633, at *6–7 (C.D. Cal. May 3, 2012)

(finding *Apprendi* inapplicable because the Board's denial of parole did not increase the petitioner's sentence of twenty-five years to life plus one year beyond the maximum sentence); *Villarta v. Swarthout*, No. C 10-02619 EJD PR, 2012 WL 506567, at *4 (N.D. Cal. Feb. 15, 2012) (finding "the *Apprendi* jury requirement is not applicable to state parole hearings because parole determinations are not traditionally within the function of the jury").

Accordingly, the Court finds that Petitioner's Sixth Amendment claims must be dismissed.

### D.   Eighth Amendment Claim (Ground One)

In Ground One, Petitioner alleges that his 2021 parole denial violates the Eighth Amendment's prohibition against cruel and unusual punishment as it results in an "excessive" and "disproportiona[te]" sentence. (ECF No. 1 at 12.)  In moving to dismiss, Respondent argues Petitioner's Eighth Amendment claim is not cognizable in federal court. (ECF No. 12-1 at 9–13.)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *Harmelin v. Michigan*, 501 U.S. 957, 962 (1991).  The Eighth Amendment contains a "narrow proportionality principle" that "applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003).  This principle "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* at 23 (citation and internal quotation marks omitted).

In an earlier federal habeas petition, Petitioner challenged his sentence of life plus three years following his 1997 conviction of kidnapping and robbery with use of a firearm, claiming his term was disproportionate to the crime in violation of the Eighth Amendment. *See Hung Duong Nguon*, 2014 WL 996215, at *1.  The district court dismissed Petitioner's Eighth Amendment claim, stating that it could not find that his sentence was "extreme in comparison with the crimes and sentences considered by the Supreme Court in [*Rummel v. Estelle*, 445 U.S. 263 (1980), *Harmelin*, and *Ewing*]." *Hung Duong Nguon*, 2014 WL 996215, at *2.

Petitioner now argues that the Board's 2021 denial of parole violates the Eighth Amendment. (ECF No. 1 at 12–13.) However, Petitioner does not cite to, nor is the Court aware of, any clearly established federal law supporting his theory that an indeterminate life sentence, constitutional when applied, becomes unconstitutional because a prisoner is denied an early release by a parole board. On the contrary, numerous district courts in the Ninth Circuit have rejected similar Eighth Amendment challenges to parole denials as not cognizable in federal court. *See, e.g.*, *Chavez v. Broomfield*, No. CV 22-0364 FWS (RAO), 2022 WL 3720131, at *4 (C.D. Cal. July 28, 2022) ("Petitioner does not cite, and the Court is not aware of, any clearly established federal law supporting his theory that for inmates serving indeterminate life sentences, continued confinement following parole denials may violate the Eighth Amendment.") (collecting cases), *adopted by* 2022 WL 3717231 (C.D. Cal. Aug. 26, 2022); *Navarro v. Gipson*, No. ED CV 21-1529-SB (PLA), 2021 WL 4263171, at *2 (C.D. Cal. Sept. 20, 2021) (stating that numerous federal courts faced with Eighth Amendment challenges based on parole denial have rejected such claims as not cognizable); *Tatum v. Chappell*, No. CV 14-9965 DDP (AJW), 2015 WL 1383516, at *3 (C.D. Cal. Mar. 24, 2015) ("[N]o clearly established Supreme Court authority holds that the denial of parole . . . to a prisoner who is serving an indeterminate life sentence could render an otherwise constitutional sentence cruel and unusual punishment.") (collecting cases); *Molina v. Valenzuela*, No. ED CV 14-01487-BRO, 2014 WL 4748308, at *3 (C.D. Cal. Sept. 23, 2014) (district courts in the Ninth Circuit have "repeatedly held that a denial of parole from an underlying valid sentence does not implicate the Eighth Amendment").

Accordingly, the Court finds that Petitioner's Eighth Amendment claim must be dismissed.

### E. Fourteenth Amendment Due Process (Grounds Two, Three, and Seven) and State Law (Grounds Four, Five, Six, Eight, Nine) Claims

In Grounds Two, Three, and Seven, Petitioner alleges his procedural due process rights under the Fourteenth Amendment were violated in a myriad of ways during his 2021 parole hearing, including by "den[ying his] rights to be heard," "illegally den[ying him the

right] to present favorable evidence," preventing him from receiving an impartial hearing, and implementing a "no parole policy," such that his parole hearing was "a pro-forma sham review." (ECF No. 1 at 4–5, 14–16.) In Grounds Four, Five, Six, Eight, and Nine, Petitioner also challenges the grounds upon which the Board's decision relied, arguing it "failed to apply a standard of proof," it did "not provide 'some evidence' [as] necessary," his "crime was no more callous than most," and his "motive was not inexplicable or trivial compared to other offenses." (*Id.* at 4–5.)

Respondent moves to dismiss these claims on the basis that Petitioner's due process claims are not cognizable in federal court because they only raise issues of state law and would not necessitate Petitioner's speedier release. (ECF No. 12-1 at 8–9, 13–14.) Respondent further moves to dismiss these claims on the basis they are insufficiently pleaded. (*Id.* at 15–16.)

The Fourteenth Amendment prohibits deprivation of "life, liberty, or property, without due process of law." U.S. Const., amend. XIV. Applying this prohibition requires a "two-stage analysis." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Courts must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, [courts] then must decide what procedures constitute 'due process of law.'" *Id.* A liberty interest may be created by the Constitution or by state law. *Meachum v. Fano*, 427 U.S. 215, 226 (1976).

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). However, when "a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures." *Id*. Because "California's parole scheme gives rise to a cognizable liberty interest in release on parole," *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002), the state must

provide "constitutionally required procedures," but "the procedures required [in the context of parole] are minimal," *Cooke*, 562 U.S. at 220.[7]

Specifically, a prisoner has been provided constitutionally adequate process in the context of parole if he is "allowed an opportunity to be heard and . . . provided a statement of the reasons why parole was denied." *Id.* The presence of those two things is "the beginning and the end of [the Court's due process] inquiry." *Id.* at 221. Here, Petitioner attaches to his Petition the January 7, 2021 transcript of his parole hearing. (ECF No. 1-2.) Petitioner and his counsel appeared at the hearing via video conference. (*See id.*) The record attached to the Petition clearly shows that Petitioner both had an opportunity to be heard and was provided a statement of reasons why parole was denied. (*See id.*) The Due Process Clause does not require more.

Although Petitioner alleges the Board had a "no parole policy," which resulted in a pro-forma, sham, and predetermined review, the record does not support these allegations. Rather, the record attached to the Petition demonstrates that Petitioner received an individualized hearing and all the process he was due under the U.S. Constitution. *See Sanders v. Salazar*, No. EDCV 09-2016 DMG JCG, 2011 WL 1671831, at *3 (C.D. Cal. Feb. 28, 2011) (finding that the petitioner's no parole policy allegation did not merit habeas relief where he received an individualized hearing and all the process he was due under the U.S. Constitution), *adopted by* 2011 WL 1671811 (C.D. Cal. May 4, 2011). Accordingly, Petitioner does not allege a cognizable Due Process claim (Grounds Two, Three, Seven).[8]

---

[7] Although Petitioner does not appear to allege a substantive due process claim in his Petition, the Court notes that "there is no substantive due process right created by California's parole scheme." *Roberts v. Hartley*, 640 F.3d 1042, 1046 (9th Cir. 2011).

[8] The Court notes that Petitioner previously challenged the Board's 2010 denial of his parole on due process grounds. *See Hung Duong Nguon*, 2014 WL 996215, at *1–2. The district court held that Petitioner received all the process he was due and dismissed his remaining claims. *See id.*

To the extent California state law requires any additional procedures, "a 'mere error of state law' is not a denial of [federal] due process." *Cooke*, 562 U.S. at 222 (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Moreover, on federal habeas review, the issue is "not whether the state court decided the case correctly." *Cooke*, 562 U.S. at 222. "[I]t is no federal concern . . . whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied." *Id.* at 221.

Accordingly, Petitioner's claims that the Board's 2021 decision to deny parole violated various state laws (Grounds Four, Five, Six, Eight, Nine), are not cognizable on federal habeas. A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (noting that federal courts "accept a state court's interpretation of state law").

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the district court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondent's Motion to Dismiss; and (3) dismissing the Petition.

**IT IS ORDERED** that no later than **February 24, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to any objections shall be filed with the district court and served on all parties no later than **March 3, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to raise

///
///
///
///
///
///

those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 7, 2023

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge